[No. 5049.    Decided August 3, 1904.]

RICE FISHERIES COMPANY et al., Respondents, v. PACIFIC REALTY COMPANY et al., Appellants.[1]

APPEAL—TIME FOR TAKING—MOTION FOR NEW TRIAL—SUSPEND-ING FINAL EFFECT OF JUDGMENT. Where, after judgment, a motion for a new trial is made and denied, the judgment is not of final effect until the motion is determined, and the time for taking an appeal begins to run from the date of the order denying the motion for new trial.

APPEAL—REVIEW—AFFIDAVITS HOW BROUGHT UP. Affidavits in support of a motion for a new trial will not be considered on appeal unless brought up in a bill of exceptions or statement of facts.

LANDLORD AND TENANT—RIGHTFULNESS OF POSSESSION—NOTICE TO QUIT—INSTRUCTIONS. In an action for damages to personal property located on certain premises, wherein the complaint alleges that defendant wrongfully took possession of the premises, it was not error to instruct that, if the relation of landlord and tenant existed between the parties, the latter would be entitled to ten days' notice in order to determine its rights of occupancy, since the fact bears on the rightfulness of the possession.

MALICIOUS INJURY TO PROPERTY — PLEADING AND PROOF — IN-STRUCTIONS. In an action for injury to property, where the complaint charged that defendants acted maliciously, wantonly, and unlawfully, proof of a mere wrongful or unlawful injury was in support of the complaint, and it was not error to refuse to instruct that the burden was upon plaintiff to show malicious and wanton damage.

Reported in 77 Pac. 839.

New Trial—Misconduct of Juror—Poll of Jury—Change of Vote. A new trial should not be granted on the ground of improper conduct of the jury, nor because the jury was not immediately returned to the jury room after a poll showing that ten jurors had not agreed to the verdict, where, in a case tried by eleven jurors, it was found upon poll that nine agreed to the verdict and two voted in the negative, and a second poll resulted in the same vote, whereupon one of the two asked and received permission to change his vote, and upon the third poll ten agreed to the verdict, and where the time consumed was only sufficient for the doing of these things in consecutive order with no appreciable intermission.

Trial—Receiving Verdict—Instructions to Jury. Upon receiving a verdict in the absence of counsel pursuant to stipulation, where, upon a poll of the jury, at first but nine agree, it is not error for the court, in the absence of counsel, to repeat the instructions as to the number necessary to agree, and to grant a request of a juror to allow him to change his vote, in case a mistake was made.

Appeal from a judgment of the superior court for Whatcom county, Neterer, J., entered June 24, 1903, upon the verdict of a jury rendered in favor of the plaintiff for $500 damages for injury to personal property. Affirmed.

*Kerr, McCord & Craven,* for appellants.
*Crites & Romaine,* for respondents.

Hadley, J.—Respondents brought this suit against appellants to recover alleged damages for injury to personal property, and also to their business of salting and smoking fish. The complaint alleges that respondents were, on the 12th day of December, 1902, the joint owners, and that the respondent Rice Fisheries Company was in the possession, of certain frame buildings known as "Sutherland Fish Company's smoke houses," in the city of Fairhaven; that they were also the joint owners of a large amount of other personal property located in said smoke houses and on adjoining grounds, consisting of barrels, tierces, vats,

tanks, box shooks, half barrels, saltpeter, kits, pails, and other personal property; that all of said property, including buildings, was of the value of $1,500; that on said date the appellants, acting together, maliciously, wrongfully, unlawfully, and by force, took possession of all of said property, and broke, damaged, destroyed, and converted it to their own use; that by reason of the destruction of said property, respondents were also damaged in their business. Damages were demanded in the sum of $2,000. The answer is a general denial. A trial was had before the court and a jury, resulting in a verdict for respondents in the sum of $500. The court withdrew from the consideration of the jury the issue as to damage to respondents' business, for the stated reason that there was no evidence upon that subject. Appellants' motion for new trial was denied, judgment was entered upon the verdict, and this appeal is from the judgment.

Respondents moved to dismiss the appeal, for the alleged reason that the notice of appeal was neither served nor filed within the time limited by law. The judgment was entered on the 24th day of June, 1903, and the notice of appeal was served and filed on the 3rd day of October, 1903. It is true the appeal was taken more than ninety days after the date of the judgment, but the motion for new trial, which was seasonably served and filed, was not acted upon by the court until September 26, 1903. By the terms of § 1, p. 285, Session Laws of 1903, judgment in conformity with the verdict shall be entered immediately, as was done in this case. It is, however, provided in the same section that, if a motion for new trial shall be seasonably filed, execution shall not issue upon the judgment until the motion shall be determined. Construing said section in connection with other statutory provisions, this court held

in *State ex rel. Payson v. Chapman,* ante, p. 64, 76 Pac. 525, that, when a motion for new trial has been filed within time, a judgment is not of final effect until the motion is determined, and that the time for taking an appeal begins to run from the date of the order denying the motion for new trial. This appeal was therefore taken within the time limited by law. The motion to dismiss the appeal is denied.

Respondents also move to strike from the transcript certain affidavits purporting to be in support of the motion for new trial, for the reason that the same are not embodied in a bill of exceptions or statement of facts. It has been frequently held by this court that such affidavits are in the nature of evidentiary matter and must be certified by the trial court as a part of the record, and as containing facts which were considered by the court below, in order to entitle them to consideration here. *Chevalier & Co. v. Wilson,* 30 Wash. 227, 70 Pac. 487; *Griggs v. MacLean,* 33 Wash. 244, 74 Pac. 360; *Shuey v. Holmes,* 27 Wash. 489, 67 Pac. 1096. The motion to strike the affidavits is granted.

It is assigned by appellants that the court erred in instructing the jury that, if they found that the relation of landlord and tenant existed between the Rice Fisheries Company and Pacific Realty Company, then the former company would be entitled to ten days' notice in order to determine its right of occupancy, and unless such notice was given it would have the right, under certain conditions, to recover. The theory upon which this instruction is assailed is that the question of the right of respondents to possession of the realty upon which the buildings in controversy were located is not an issue under the pleadings. We think it must be presumed, from the allegations of the

complaint, that the respondents' occupancy of the buildings where they stood was at the time a rightful occupancy. No other theory would sustain the allegation that the appellants wrongfully took possession of the buildings. If the occupancy of the buildings, as they then stood, was rightful, then it must follow that the occupancy of the ground upon which they stood was also rightful. Appellants' general denial put that fact in issue. Evidence upon the matter of notice, or lack of notice, to quit was, therefore, competent as bearing upon the question of rightful or wrongful possession, and, correspondingly, upon the right or wrong of appellants in taking possession and removing the property from the lands. The criticized instruction submitted the issue raised by that evidence, and, for the reasons stated, was not erroneous.

Errors are urged upon the court's refusal to give several requested instructions to the effect that the only theory upon which respondents could recover was that appellants maliciously and wantonly injured and destroyed the property, and that the burden was upon respondents to show that it was so done. It is true the complaint charges that appellants acted maliciously, but it also charges them with acting wrongfully and unlawfully. Proof of a mere wrongful or unlawful injury to the property was, therefore, in support of the complaint, even though the element of maliciousness were wanting. If respondents' occupancy of the buildings was at the time a rightful one by reason of tenancy, then it was wrongful and unlawful for appellants to forcibly remove the buildings and other property, even though it was not done maliciously or wantonly, and for resulting damage in such case appellants must be liable. We think the court did not err in refusing the requested instructions, and we believe the jury were fully and fairly instructed as to the law of the case.

It is next assigned that error was committed in over-ruling the motion for new trial. So far as evidence in support of the verdict is concerned, there was, we think, testimony to sustain it, and the conflicting features having been settled by the jury, we shall not disturb the verdict on that ground. It is, however, claimed that a new trial should have been granted for alleged irregularities occurring at the time the jury returned to the court to announce their verdict. The affidavits having been stricken from the record, our examination of this matter is confined to what appears in the statement of facts, in a statement prepared by the judge himself, and designated "Supplemental Statement," but attached to the original statement of facts and certified with it. That statement shows that it was agreed by counsel for both parties that when the jury should agree upon a verdict the court should receive it in the absence of respective counsel. After a time the jury reported an agreement upon a verdict and, as they were about to return to the court room, one of respondents' attorneys entered the room, appellants' attorneys being absent. After the jurors had taken their places in the jury box, the court inquired if they had agreed upon a verdict. The foreman replied in the affirmative, and passed the verdict to the court. The clerk, by direction of the court, read the verdict, and immediately afterwards the court asked if it was the verdict of each one, to which the response came, "It is," and possibly some juror said "It is not." Thereupon the court ordered the jury polled, as is customary in said court when a verdict is received in the absence of attorneys in the case. On being polled, nine jurors replied in the affirmative, and two in the negative (the cause by consent having been tried by eleven jurors). The court then ordered the jury polled again,

thinking a mistake might have been made by some juror. The result was the same as before. The court then stated, in substance, that the jury had no business to announce that it had agreed upon a verdict when it had not so agreed, adding, "This is no verdict," and further stating that they had been plainly instructed that it was necessary for ten to agree before they could return a verdict. The court then turned to examine the statutes and about this time, or possibly just as the second poll was being taken or commenced—as to that the court is not positive—one juror who had voted in the negative stated that he would like to say a word, if it was proper to do so, or words to that effect. Whereupon the court promptly informed him that no statement was proper.. About this time the same juror asked if he could change his vote, to which the court replied "If you have made a mistake," or words to that effect. The court thereupon directed the jury to be polled again, and, upon doing so, ten jurors responded in favor of the verdict, the aforesaid juror voting "Yes," instead of "No," as theretofore, and one other juror at all times voting "No." Thereupon the verdict was ordered filed in the presence of the jury, and the jury were discharged. The court further stated that the time consumed in the foregoing proceedings was only sufficient for the doing of the things above enumerated, in their consecutive order, without any appreciable intermission. The court believes that, after the first poll of the jury, some of the jurors sitting next to the said juror who changed his vote said something to him by way of whispering, prior to his asking permission to change his vote. This fact was not observed by the court, but from sworn statements of other persons, he is convinced that such is the fact.

Appellants contend that the law provides that, if upon a poll a sufficient number of jurors do not assent to a ver-

dict, they shall be immediately sent back to the jury room. The statute, § 5012, Bal. Code, says: "In case ten of the jurors do not answer in the affirmative, the jury shall be returned to the jury room for further deliberation." The statute does not say they shall be *immediately* sent back to the jury room, and there is nothing in the statute to prohibit more than one poll, if the court believes a mistake has been made, or is informed by a juror that he desires to change his vote. Each juror's vote must be directed by his own conscience, and is not under the control or direction of the other jurors. There seems to be no good reason, therefore, why he may not change his vote in the presence of the court and jury, under the circumstances shown in this case, without having to go through the mere form of going back to the jury room. There is not sufficient showing that any improper influences were brought to bear upon the juror. The mere whispering of one juror to another does not, of itself, show that he was even speaking about the verdict. Whether a whispered conversation about the verdict, under the circumstances shown here, would constitute prejudicial error would depend upon what was said, and since there is nothing in the record to show what was said, no prejudice appears.

It is contended that the communication of the judge to the jury in the manner aforesaid was in the nature of instructions, and should have been made in the presence of appellants or their attorneys. What was said by the court was but a reiteration of what he had said as to the law in his instructions, given before the retirement of the jury. No new feature as to the law of the case was introduced. He simply stated what he said in his instructions, that ten jurors must agree before they could return a verdict, and informed a juror who asked for his own information, that

he could change his vote if he had made a mistake.   That a mistake had been made seems evident, as it will be presumed, under the instructions given and without other showing, that the foreman understood that there were ten votes in the jury room for the verdict, or he would not have reported that a verdict had been reached.   Counsel must know the possibility of such circumstances arising, and, if they voluntarily consent for the court to receive a verdict in their absence, that consent must carry with it the understanding that the court is at liberty to act as a reasonable and sensible man in dealing with such simple emergencies when they arise.   He should not be left as though he were dumb, without privilege to open his mouth, merely because counsel have not happened to be in court.   The orderly dispatch of business will not permit that he shall be thus narrowly restricted.   The juror asked a plain question, which it would have been his right to ask if counsel had been present.   The answer of the court was concise and correct.   No prejudice to appellants' rights could have resulted therefrom.   The case of *State v. Austin,* 6 Wis. 203, cited by appellants, was a criminal case.   On the first poll of the jury one juror answered, "I subscribed the verdict."   The court directed that the question be put to the juror again, and told him he must answer "Yes" or "No." The juror replied, "Then I will never say 'Yes,' because I subscribed it."   He being further instructed by the court as to his duties as a juror, the question was put to him a third time, and he answered, "Yes."   The supreme court held that it was evident that such a doubt existed in the juror's mind, which fact was made known to the court, as made the reception of the verdict erroneous.   The holding was clearly right, particularly in a criminal case where the element of reasonable doubt is always material.   In

*Farrell v. Hennesy,* 21 Wis. 639, also cited by appellants, a juror stated that he consented to the verdict as a matter of accommodation, but that it was against his conscience. It was held that the court should have directed the jury to retire and reconsider their verdict. No such conditions as appeared in the Wisconsin cases are shown in the case at bar. As far as the record discloses, the juror acted voluntarily as his conscience and judgment directed, and with no attending coercive or unduly persuasive circumstances. It was not error to receive the verdict.

The judgment is affirmed.

MOUNT, ANDERS, and DUNBAR, JJ., concur.